FILED ___ LODGED
___ RECEIVED ___ COPY

MAR 1 2 2013

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

NOLAN RYAN, *Plaintiff*
3039 Peoria Avenue
C102-115, Phoenix AZ 85029
602 - 413 - 1220

## IN THE UNITED STATES DISTRICT COURT
## STATE OF ARIZONA

| | |
|---|---|
| **NOLAN RYAN**, an individual | ) CASE NO: |
| *Plaintiff*(s) | ) |
| *vs.* | ) CV-13-00526-PHX-MEA |
| **QUALITY LOAN SERVICE**, a California corporation; | ) |
| *Defendant(s)* | ) |

**COMES NOW**, the Plaintiff Nolan Ryan (hereinafter "Plaintiff") complaining of the defendants and each of them as follows;

### INTRODUCTION

1.  This action is an action brought by the Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensator, special, general and punitive damages.

2.  Plaintiffs disputes the title and ownership of the real property in question located at 25240 North 50th Drive, Glendale AZ 85310, as more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof (the "Property"), which is the subject of this action. Third party debt collectors, and others alleged to have ownership, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Deed of Trust related to the Property, and, thus, do not have lawful ownership or a security interest in the Property which is described in detail herein.

COMPLAINT FOR DAMAGES
- 1 -

3.   Plaintiff Nolan Ryan alleges that he owns the Property in fee simple, with all rights and appurtenances thereto, and free of any claims or encumbrances alleged by Defendants.

4. Plaintiff alleges that Defendant Quality Loan Service, cannot show proper receipt, possession, transfer, negotiations, assignment and ownership of the subject property, including the Promissory Note, Deed of Trust, resulting in imperfect security interest and claims.

5.  Plaintiff further allege the Defendant, and each of them, cannot establish possession and proper assignment of the Deed of Trust herein; therefore, none of the Defendants have a perfected claim of title or security interest in the Property. Defendants, and each of them, do not have the ability to establish that the mortgages that secure the indebtedness, or Note, were legally or properly acquired.

6.   Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff and Defendants, and each of them. Plaintiff's desires a judicial determination and declaration of its rights with regard to the Property and the corresponding Promissory Note and Deed of Trust.

7.   Plaintiff claims defendants are liable for violations of the Fair Debt Collection Practices Act, and Arizona Consumer Fraud Act, Truth and Lending Act (TILA), Real Estate Settlement Procedures Act (RESPA), and Wrongful Foreclosure.

8. Plaintiff also seeks redress from Defendants identified herein below for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a. An invalid and unperfected security interest in Plaintiffs Property hereinafter described;

b. An incomplete and ineffectual perfection of a security interest in Plaintiff subject Property;

COMPLAINT FOR DAMAGES
- 2 -

c. A void or voidable Deed of Trust, for which there is a reasonable apprehension that, if left outstanding, may cause a serious injury.

9. Plaintiff provides this 'caveat' although Plaintiff may plead issues, facts, allegations, and statements upon information and belief, contained in Plaintiffs Complaint. Plaintiff makes clear that in all references as it relates to the terms creditor, mortgagee, servicer, trustee, lender, owner, principle or any other mortgage related term(s) defined within Plaintiffs Deed of Trust, and Promissory Note. Those terms as discussed hereto in Plaintiff's Complaint and at all times relevant does "not" describe, apply to, in any way the capacity of either of the defendants named in this action. Plaintiffs asserts that none of the defendants are party to Plaintiffs Deed of Trust, or Promissory Note, therefore Plaintiff alleges defendants and each of them are deemed strangers to the Plaintiffs mortgage transaction, and thus are mere third party strangers without standing.

A. Defendants and each of them are for purposes of Plaintiffs action, "debt collectors" as defined by 15 USC§1692a (6), and A.R.S.§44-1521 *et*. seq.

## I.                                    **THE PARTIES**

10.  Plaintiff "**NOLAN RYAN**" is now and at all times relevant to this action, a resident of the State of Arizona.

11.  Defendant "**QUALITY LOAN SERVICE**" (hereinafter"QLS") is a California corporation. Defendant "QLS" can be served at its headquarters located at 2141 5th Avenue, San Diego, CA 92101. Defendant "QLS" claims to be a Trustee pursuant to Plaintiff Deed of Trust.

A.  Plaintiff is a "consumer" as defined by 15 USC§1692a (3). The term consumer means any natural person obligated to or allegedly obligated to pay any debt.

B. Defendants and each of them are not "creditors" as defined by 15 USC§1692a (4). The alleged debt defendants make claim to is a household debt as defined by 15 USC§1692a(5).

C. Defendants and each of them are "*debt collectors*" as defined by 15 USC§1692a (6). Defendants are attempting to collect an alleged debt, which was for household purposes. The alleged debt at issue in this case upon belief was obtained by each defendant upon assignment and or transfer of the "defaulted debt"15 USC §1692a (4).

12.   At all times relevant to this action, Plaintiff is still the current title owner of the subject Property located at 25240 North 50th Drive, Glendale AZ 85310 (the "Property").

13.   Plaintiff are unaware of the true names, capacities, or basis for liability of Defendants sued herein as Does 1 through 100, inclusive, as each fictitiously named Defendant is in some manner liable to Plaintiffs, or claims some right, title, or interest in the Property. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that at all relevant times mentioned in this Complaint, each of the fictitiously named Defendants are responsible in some manner for the injuries and damages to Plaintiffs so alleged and that such injuries and damages were proximately caused by such Defendants, and each of them.

14.   Plaintiff are informed and believes, and thereon alleges, that at all times herein mentioned, each of the Defendants were the agents, employees, servants and/or the joint-venturers of the remaining Defendants, and each of them, and in doing the things alleged herein below, were acting within the course and scope of such agency, employment and/or joint venture.

II.          **JURISDICTION AND VENUE**

15. The US District Court has jurisdiction pursuant to 28 USC§ ¶15 USC §1692, 12 USC§2605, 15 USC§1641g. Venue is proper as the subject property is situated in Maricopa County Arizona.

III.          **FACTUAL ALLEGATIONS**

16. Plaintiff Nolan Ryan on or about June 26, 2007, executed a series of mortgage documents, including but not limited to a Note and Deed of Trust, a true correct copy attached hereto as ***Exhibit B***, securing the Property in the amount of $632,000.00 in favor of Taylor Bean & Whitaker.

17. Prior to August 2009, Taylor, Bean & Whitaker Mortgage Corp. ("**TBW**" or"**Debtor**") was the largest independent (i.e., non-depository owned) mortgage lender in the United States. A significant component of TBW's business was its mortgage servicing operation. As of August 3, 2009, TBW serviced approximately 512,000 mortgage loans having a combined unpaid principal balance ("**UPB**") in excess of $80 billion. These mortgages ultimately were owned by various investors, including the Federal Home Loan Mortgage Corporation ("**Freddie Mac**") and the Government National Mortgage Corporation ("**Ginnie Mae**"), which together accounted for approximately 95% of the total UPB, as well as "private label" mortgage investors, such as Wells Fargo and Bayview, which collectively accounted for approximately 5% of the total UPB. Finally, TBW serviced mortgages for its own portfolio and those of related entities, such as Platinum Community Bank ("**Platinum**").

18. TBW's principal banking relationship was with Colonial Bank, N.A. ("**Colonial**"). TBW maintained approximately 90 custodial accounts at Colonial, which were part of its servicing operation, plus approximately 10 operating and cash accounts.

19. Historically, borrowers' mortgage payments were initially deposited into a single TBW bank account maintained at Colonial known as the "Custodial Funds Clearing Account." The vast majority of the monies deposited into the Colonial Custodial Funds Clearing Account were transferred to various custodial accounts commonly referred to as "P&I" (Principal and Interest) and "T&I" (Taxes and Insurance) accounts maintained on behalf of the various investors, which are the owners of the mortgages.

20. Payments of real estate taxes and insurance premiums as well as other escrow related payments were made from TBW's Escrow Disbursement Clearing Account maintained at Platinum (the "**Platinum EDCA**"). Refunds to borrowers of T&I "escrow balances" were also made from this account.

21. Funds necessary to pay taxes, insurance, and certain related borrower refunds were accumulated into a single EDCA account at Colonial as part of a daily sweep of the Colonial T&I accounts and then transferred to the Platinum EDCA account, from which disbursements were made, typically on a daily basis, by checks and wire transfers.

22. During August and September 2009, each of TBW's investors demanded that the servicing of its respective mortgage assets be transferred to a different service provider. As more fully described in the Debtor's First and Second Interim Reconciliation Reports, mortgage servicing operations have been transferred to the investors' selected new servicers (the "**Subsequent Servicer(s)**"), and the transfer process is substantially complete.

23. On or about August 5, 2009, a hold was placed on TBW's accounts at Colonial, including those used in the mortgage servicing operations. Subsequently, pursuant to an order of the Alabama State Banking Department dated August 14, 2009, Colonial was closed and the FDIC was appointed as receiver. TBW's Chapter 11 filing followed 10 days later.

24. The combination of these events resulted in myriad problems for borrowers and TBW, including the following:

a. Thousands of borrower checks delivered to the Colonial lock box were not deposited.

b. Electronic payments were not completed as scheduled.

c. Borrowers were not credited with timely mortgage payments.

d. Tax and insurance payments due on behalf of borrowers were not made when due.

e. Approximately $31.3 million in checks written on the Platinum EDCA prior to August 21, 2009, were not honored by Platinum because the sweep and transfer from custodial accounts and the EDCA at Colonial ceased on August 5, 2009.

f. The custodial accounts and other accounts under TBW's control were not reconciled and amounts due to be transferred from the Colonial Custodial Funds Clearing Account were not allocated to the appropriate custodial account.

g. Certain mortgage payoffs—i.e., in each such instance, the payment of the outstanding mortgage balance—were not processed completely.

h. Certain insurance proceeds received by TBW on behalf of borrowers for damage or destruction to the borrowers' homes were not remitted to applicable borrowers.

25. These circumstances created significant confusion and problems for borrowers and became the focus of regulatory actions filed by more than 40 states.

**A. Borrower Issues**

26. Identifying and resolving problems encountered by individual borrowers has required significant time and effort by the Debtor's professionals and remaining employees. While the Debtor has made progress on several other issues,

the Debtor has identified four borrower issues that remain prevalent and require resolution. These issues have been identified by the Debtor as:

> Issue 1: Insurance Proceeds ("Loss Drafts")
>
> Issue 2: Tax and Insurance Escrow Refunds
>
> Issue 3: Bounced Checks Written on the Platinum EDCA
>
> Issue 4: Net-Funded Loans

**Issue 1: Insurance Proceeds ("Loss Drafts")**

27. In the ordinary course of its business, TBW received money from property insurance companies in payment of individual borrowers' claims for loss or damage to property resulting from causes such as fire or storm damage. These insurance payments are referred to as "loss drafts." In the normal course, these funds were then turned over or made available to the borrower to make payments to contractors for repairs and other damages covered by the subject claim.

28. After the administrative hold was imposed on its Colonial accounts on August 5, 2009, TBW was unable to transfer to the affected borrowers the loss drafts on hand as of that date, as well as those received afterwards. This situation has imposed obvious hardships on the affected borrowers, who have been required to pay for – or delay – repairs to damaged properties. Even so, the borrowers have been required to continue to make their mortgage payments despite not having access to the loss drafts which should be available to pay for repairs. In addition to creating difficulties for the borrowers, these circumstances also increase the risk of mortgage default for investors.

29. The vast majority of loss drafts on hand at the time the hold was placed on TBW's accounts had been accounted for and allocated to specific investors' custodial T&I accounts at Colonial. The total loss draft amount in investors' T&I accounts as of August 5, 2009, was $11,063,118.

30. TBW continued to receive additional loss drafts after August 5, 2009. Of the amounts received, a balance of $447,218 is on deposit in the Colonial Custodial Funds Clearing Account, a balance of $781,367 is on deposit in the Regions Reconciliation Accounts, funds in the amount of $264,408 were forwarded by TBW to the Subsequent Servicers, and a balance of $7,000 is on deposit in the Colonial EDCA Account.

31. Cumulatively, approximately 900 individual borrowers are owed $12,563,111 in loss drafts, payable now or as repairs and replacements are completed.

## QUALITY LOAN SERVICE

32. On or about September 15, 2011 defendant Quality Loan Service executed and filed a Substitution of Trustee (*see*, **Exhibit B**) with the Maricopa County Recorders' Office. The document in part states that Quality Loan Service executed the document, but it was signed by a Roundpoint Mortgage Servicing Corporation as attorney in fact for then insolvent Taylor Bean & Whitaker.

33. On or about March 3, 2011 defendant Quality Loan caused to be filed an alleged Corporate Assignment of Deed of Trust. (*see*, **Exhibit C**) The proffered Assignment purports to Assign Plaintiffs Mortgage and Note to Taylor Bean & Whitaker. Consequently, the alleged assignment of Plaintiffs Deed of Trust from Taylor Bean & Whitaker to itself, demonstrates its fraudulent purpose.

34. Conversely if Taylor Bean & Whitaker was the secured party, creditor, and owner of Plaintiffs Mortgage and Note, there would have been no need to such Assignment from TBW back to TBW. Therefore this instrument is in violation of Plaintiffs constitutional rights, property rights, and importantly a Breach of the Deed of Trust.

35. Taylor Bean & Whitaker filed for bankruptcy on or about August 2009, therefore no proof exist that Taylor Bean & Whitaker, who was under the

jurisdiction of the US Bankruptcy Court Middle District of Florida pursuant to Case No. 3:09-bk-07047-JAF, authorized this transaction. Furthermore, there is no record of the US Trustee relieved Quality Loan Service from the automatic Stay to pursue any collection activity.

36.   Plaintiff served notice upon defendant Quality Loan in the form of a Qualified Written Request, and Debt Validation Notice pursuant to 12 USC§2605(e), and 15 USC§1692g the RESPA, and FDCPA. Defendant failed to respond to Plaintiffs request.

37.   On or about January 9, 2012 defendant Quality Loan alleges conducted a non-judicial foreclosure sale of Plaintiffs subject property. A true and correct copy of the Trustee Deed Upon Sale is attached hereto as **Exhibit D.**

38.   Upon inspection of the Trustee Deed Plaintiff noticed specifically that defendant Quality Loan sold the Plaintiffs property for $780,965.12. Plaintiff obtained an alleged Payoff Quote from defendant Quality that stated his balance owed was $426,897.98. Therefore proceeds were gained by defendant Quality Loan in the amount of $354,068.00. Pursuant to A.R.S 33-812 all proceeds from any *legal* sale of property must be paid to the Maricopa County Treasurer.

39.   Plaintiff contacted the Maricopa County Treasurer and was informed no proceeds were in their possession in the name of the Plaintiff. Therefore defendant Quality in the least in entitled to the excess proceeds in the amount of $354,068.00. Notwithstanding, Plaintiff alleges defendant Quality Loan was never a Trustee pursuant to Plaintiffs Deed of Trust with authority to conduct any sale of Plaintiffs property.

40.   Plaintiff therefore alleges defendant Quality Loan was without legal authority to force Plaintiff out of his property via non-judicial foreclosure sale. Plaintiff further alleges upon belief that defendant Quality Loan conducted this

foreclosure sale without authority from the US Bankruptcy Middle District of Florida, or US Trustee for Taylor Bean and Whitaker bankruptcy case.

41. Plaintiff Nolan Ryan was significantly damaged and harmed by the deceptive acts of the defendant Quality Loan. Plaintiff was forced to relocate along with his family abruptly. Defendant Quality was illegally and unlawfully enriched through the illegal sale of Plaintiffs subject property in the amount of $780,965.12. Plaintiff alleges even if the sale of the property was *somehow* legal, Plaintiff is owed more than $354,068.00. plus pre-judgment and post judgment interest at a statutory rate, plus actual damages, consequential damages, statutory damages and punitive damages to be determined by the court.

## IV.                    FIRST CAUSE OF ACTION
### QUIET TITLE

42. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

43. Plaintiff is credibly informed and believes that Defendant Quality Loan claims an interest or interests in the Property that are adverse to Plaintiff's fee simple title to the property. Plaintiff upon information and belief Plaintiff asserts that defendant Quality Loan may attempt to convey title to Plaintiffs property to some unknown party.

44. Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Property and quieting Plaintiff's title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem valid and avoiding any liens or encumbrances upon the Property created by Defendants or by their putative predecessors, or by any of them.

45. Plaintiffs desires and is entitled to a judicial declaration quieting title in Plaintiffs as of the date on which is loan transaction was consummated.

46. Plaintiffs verifies the truth of the allegations contained herein for the purpose of complying with the requirement set forth in ARS§12-1102 that a Complaint for Quiet Title be given under oath. Plaintiff's Verification Under Oath is attached hereto and by this reference made a part of this Complaint.

47. Plaintiff's moves this court to require the defendant to provide the genuine, original Note and a clear chain of title to the Plaintiff as proof that is it the true party to which the debt is owed, so that Plaintiff could satisfy and or tender any alleged payment due, and or satisfy the debt if any.

**V.        SECOND CAUSE OF ACTION**
**VIOLATION OF 15 U.S.C.§1641(g) TRUTH IN LENDING ACT**
(QUALITY LOAN)

48. Plaintiff re-allege the allegations above as if fully set out herein.

49. With respect to Plaintiff defendant Quality Loan alleges to have received by assignment a beneficial interest in their mortgage and note. Defendant alleges it is a creditor and or an agent of the credit within the meaning of 15 U.S.C.§1641(g).

50. Defendants allege they are "creditors" within the meaning of 15 U.S.C. §1641(g), although no evidence supports these allegations.

51. Said mortgage secures an interest in real estate which is used by Plaintiff as their principle dwelling, such transfer, within 30 days, and make all the required disclosures set out above.

52. Defendants failed to notify Plaintiff at all, and therefore failed to make the requisite disclosures.

53. Plaintiff was harmed by the willful and negligent acts of each of the defendants, whereby defendants' failures caused uncertainty, confusion, emotional stress damages among others. Defendants' acts also caused damages to Plaintiff in that Plaintiff refrained from making payments to defendants due to the conflicting notices, and contradicting claims of ownership.

54. Therefore defendants are liable under TILA §131, for its failure to provide such information, including statutory damages in the amount of $4,000.00 for each violation, actual damages if any be proven, reasonable attorney's fees, and costs expended in this proceeding.

**VI.**              **THIRD CAUSE OF ACTION**
**VIOLATION OF THE FAIR DEBT CREDIT PRACTICES ACT**
(QUALITY LOAN)

55. Plaintiff re-allege the allegations above as if fully set out herein. Plaintiff served defendant Quality with a Notices of Dispute. Additional Notice of Dispute has been docketed and filed along with Plaintiffs Complaint.

56. Plaintiff claims each of the defendants are liable to Plaintiff for violations of 15 U.S.C.§1692, specifically 15 U.S.C.§1692e. Defendant's use of false, deceptive, and/or misleading representation with the collection of any debt constitutes violation(s) of the act.

57. Plaintiff' claims each of the defendants are liable to Plaintiff, for violations of 15 USC§1692e (4) which prohibits debt collectors from making false representations that nonpayment of any debt will result in the seizure of any property unless such action is lawful.

58. All Defendants engages in the collection of debts from consumers, using the mail and telephone. Defendants regularly attempts to collect consumer debts alleged to be due to another. Defendants are "debt collectors" as defined by the FDCPA, 15 U.S.C.§1692a(6). Defendants violated the FDCPA, and caused damages to Plaintiff by their failure to comply with the Act. Defendant's violations include, but are not limited to the following;

    a. Defendant violated §1692d of the FDCPA by engaging in conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of an alleged debt and;

COMPLAINT FOR DAMAGES
- 13 -

b. Defendant violated §1692(d)(5) of the FDCPA by causing a telephone to ring engaging any person in telephone conversation repeatedly and/or continuously with the intent to annoy, abuse or harass any person at the called number and;

c. Defendant violated §1692(j) of the FDCPA by using unfair or unconscionably means in connection with the collection of an alleged debt;

d. Defendant violated 1692(e) using false, deceptive, or misleading misrepresentations or means in connection with the collection of a debt, in violation of 15 U.S.C.§1692e, and;

e. using unfair or unconscionable means to collect or attempt to collect a debt, in violation of 15 U.S.C. §1692f;

f. Defendant violated the 1692(e)(8) requires debt collectors to communicate the disputed status of a debt if the debt collector 'knows or should know' that the debt is disputed, standard requires no notification by the consumer, written or oral, and instead, depends solely on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is "acquired."

g. Defendant MHL, and MAS filed a Forcible Detainer case against the Plaintiff prior to validating the alleged debt. Defendant's acts were an attempt to collect a debt. Defendants failed to provide proof of their alleged debt.

59. Defendant's acts as described above were willful, intentional, malicious, and with intent confuse, mislead, and distract Plaintiff by coercing the Plaintiff to pay defendants on the alleged debt.

60.   All of the defendant's acts were in violations of the FDCPA, including the fact that neither defendant has provided proof of their alleged debt to Plaintiff. All defendants are third party debt collectors.

61.  As a result of the foregoing violations of the FDCPA, Defendants, and each of them are liable to the Plaintiff pursuant to 15 USC§ 1692k. Plaintiff is entitled to statutory damages of $1000.00, actual damages, punitive damages, costs and fees, to be determined at trial.

## VII.                    FOURTH CAUSE OF ACTION
### VIOLATION OF RESPA 12 USC§2605
(Defendant MetLife)

62.  Plaintiff re-allege the allegations above as if fully set out herein.

63. Plaintiff's August 9, 2011 Plaintiff sent a letter to Defendant Quality Loan styled a "Qualified Written Request" as defined in §2605(e)(1)(B) of the Real Estate Settlement Procedures Act ("RESPA") [12 U.S.C. § 2605(e)(1)(B)]. Thus Plaintiff's letters had the dual effect of invoking Plaintiff's rights under TILA § 131(f), 15 USC§1692 as well Plaintiff's rights under RESPA § 6(e)(1). 12§ USC 2605e (1)(A) as amended effective July 16, 2010 by the Dodd Frank Financial Reform Act and Reg.X Section 3500.21(e) (1).

64.  The Defendant did not respond within 20 days to Plaintiff's request for the name of the owner and holder of the First Mortgage Note as required by § 6(e)(1) of RESPA [12 U.S.C. § 2605(e)(1), and as recently as October 9, 2012 has never provided Plaintiff with a complete and or unambiguous response, thus violating both 12 U.S.C.§2605(e)(1) (RESPA) and 15 U.S.C.§1641(f) (TILA) with respect to the First Mortgage Loan.

65.  Defendants failure to respond to Plaintiffs requests constitutes violations of Title 12 USC§2605, and are therefore liable to Plaintiff in the amount of $2000.00 per violation (2). Plaintiff sent defendant Quality Loan two such notices.

VIII.                    **FIFTH CAUSE OF ACTION**
                        **BREACH OF CONTRACT**
                         (QUALITY LOAN)

66.  Plaintiff re-allege the allegations above as if fully set out herein.

67.  Defendants and each of them allege they are party to Plaintiffs Deed of Trust and promissory Note. Defendants' willful acts as alleged in Plaintiff's Complaint, constitute a Breach of Contract pursuant to Plaintiffs Deed of Trust.

68.  Specifically defendants documents filed in the Maricopa County Recorders' Office, (*see*, Exhibits B, C, D,) was not in compliance with the express terms and language contained in Plaintiffs Deed of Trust.

69. Defendant Quality Loan never" sent Default Notices in compliance with the Deed of Trust. Defendant Quality Loan therefore did not perform the conditions precedent.

70.  As a result of the allegations herein the Defendants has failed to comply with the terms of a Plaintiffs Deed of Trust. Defendants are therefore liable for Breach of Contract, Plaintiffs are entitled to the recovery of actual damages, punitive damages, cost and fees.

IX.                     **SIXTH CAUSE OF ACTION**
              **VIOATION OF ARIZONA CONSUMER FRAUD ACT**
                      **ARS 44-1521 *et*, seq.**
                        (QUALITY LOAN)

71. Plaintiff restates, re-alleges, and incorporates by reference the allegations contained in each of the preceding paragraphs as though fully set forth herein. Defendants and each of them, through their agents, employees and others acting on their behalf or at their direction, have employed deception, deceptive acts or practices, fraud, false pretenses, false promises, misrepresentations or concealment, suppression or omission of material fact with the intent that others rely on such concealment and/or suppression or omission in violation of A.R.S. § 44-1522(A).

72. In particular Defendants have, *inter alia*, engaged in deceptive acts by and through the notices, letters, responses, correspondences as clearly evidenced in **Exhibits B-H.** Defendants' acts have caused damages to the Plaintiff, therefore Plaintiff is entitled to statutory, actual, punitive damages, cost and fees consistent with said statute.

**SEVENTH CAUSE OF ACTION**
**WRONGFUL FORECLOSURE**

73.  Plaintiff re-allege the allegations above as if fully set out herein.

Defendant Quality Loan on January 3, 2012 did conduct a wrongful foreclosure upon Plaintiffs subject property. Defendant Quality Loan was without legal authority to conduct any such sale of Plaintiffs property.

74. Defendant Quality Loan did secure funds of $780,965.12 due to the illegal sale of Plaintiffs subject property. Defendant Quality Loan acted fraudulently to obtain these proceeds which caused significant harm to Plaintiff and his family.

75. Plaintiff is therefore entitled to damages in the amount of $780,965.12 plus pre and post judgment interest at the statutory rate, plus consequential, punitive and any such other damages determined by the court.


Dated: March 12, 2013

Nolan Ryan, *Plaintiff*
3039 Peoria Avenue
C102-115, Phoenix AZ 85029

**VERIFICATION OF PLAINTIFF UNDER OATH**

I, Nolan Ryan affirm under oath that I have read the foregoing Complaint, and that the information contained therein is true and correct, based upon personal knowledge and upon information and belief.

EXHIBIT A
PROPERTY LEGAL DESCRIPTION

20070758619

Lot Ninty-one (91), INDIAN SPRINGS ESTATES, according to the plat of record in the office of the County Recorder of Maricopa County, Arizona, in Book 306 of Maps, page 9.

EXHIBIT B
SUBSTITUTION OF TRUSTEE

Unofficial

20 Document

Recording requested by:

11
ho

When recorded mail to:

QUALITY LOAN SERVICE CORPORATION
2141 5th Avenue
San Diego, CA 92101
619-645-7711

TS No.: **AZ-11-451945-AB**                                    Space above this line for recorders use
Order No.: **110304944-AZ-GTI**
**MERS MIN No.: 100029500018666788 MERS Telephone No. 1-888-679-6377**

## Substitution of Trustee

WHEREAS, **NOLAN RYAN , AN UNMARRIED MAN** was the original Trustor, **CAPITAL TITLE AGENCY INC** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR TAYLOR, BEAN & WHITAKER MORTGAGE CORP. A FLORIDA CORPORATION** was the original Beneficiary under that certain Deed of Trust dated **6/26/2007** and recorded on **7/2/2007** as Instrument No. **20070758619,**       of Official Records of **MARICOPA** County, **AZ** describing land therein as LOT NINTY-ONE (91), INDIAN SPRINGS ESTATES, ACCORDING TO THE PLAT OF RECORD IN THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 306 OF MAPS, PAGE 9.. and;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **QUALITY LOAN SERVICE CORPORATION** , a California Corporation as Trustee under said Deed of Trust.

The successor trustee qualifies to act as a trustee under A.R.S. §33-803(A)(1) in its capacity as a licensed Arizona escrow agent.

20110780638

TS No.: AZ-11-451945-AB
Page 2

Taylor Bean & Whitaker By: Roundpoint Mortgage
Servicing Corporation as attorney in fact pursuant to
a Limited Power of Attorney recorded October 12,
2010.

By: Dawn Adams, VP-Foreclosure

State of: North Carolina )

County of: Mecklenburg )

On 9/15/2011 before me, Lonnie Huffman a notary public,
personally appeared Dawn Adams who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and
that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.     (Seal)

My commission
expires 5/26/2016

Lonnie Huffman
Signature

EXHIBIT C
ASSIGNMENT OF DEED OF TRUST



Unofficial
Document

1

2

3

4

MARILUFT T. PURCELL
HELEN PURCELL 09:59 AM
2011-0186411 03/03/11
70 OF 92

5   When Recorded Return To:
    Taylor, Bean & Whitaker
    C/O NTC 2100 Alt. 19 North

6   Palm Harbor, FL 34683

7   **Loan #: 1866678**

8

9

### CORPORATE ASSIGNMENT OF DEED OF TRUST

10  **FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned,
    **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR TAYLOR, BEAN &**
11  **WHITAKER MORTGAGE CORP., WHOSE ADDRESS IS 4901 Vineland Road, Suite 120, Orlando, FL., 32811,**
    **(ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, sell, assign,
12  transfer and set over the described deed of trust together with the certain note(s) described thereon together with all interest secured
    thereby, all liens, and any rights due or to become due thereon to **TAYLOR, BEAN & WHITAKER MORTGAGE CORP.,**
    **WHOSE ADDRESS IS 4901 Vineland Road, Suite 120, Orlando, FL 32811 (321)710-0172, ITS SUCCESSORS OR**
13  **ASSIGNS, (ASSIGNEE).**

    Said Deed of Trust made by NOLAN RYAN  and recorded  in Book  at Page  as Document # 20070758619 in the office of the
14  County Recorder of MARICOPA Arizona.

    IN WITNESS WHEREOF, the undersigned corporation has caused this instrument to be executed by its proper officer who was duly
15  authorized by a resolution of its board of directors.

    **Date: 02/13/2011**
16  **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR TAYLOR, BEAN &**
    **WHITAKER MORTGAGE CORP.**

17  By:
    **Melissa Long**
18  **VICE PRESIDENT**

19  STATE OF FLORIDA
    COUNTY OF ORANGE

20  The foregoing instrument was acknowledged before me this 13th day of February in the year 2011, by Melissa Long as VICE
    PRESIDENT for MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) AS NOMINEE FOR TAYLOR,
21  BEAN & WHITAKER MORTGAGE CORP., who, as such VICE PRESIDENT being authorized so to do, executed the foregoing
    instrument for the purposes therein contained. He/she is personally known to me.

22  Virginia A. Argo
    Notary Public - State of FLORIDA
23  Commission expires: 12/16/2012

24  **Document Prepared By:**
    E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

    form3/FRMAZ1

25  TBWAS 13700859 -_ CI2951296  MIN 100029500018666788 MERS PHONE 1-888-679-MERS

26  
    *13700859*

EXHIBIT D
TRUSTEE DEED UPON SALE

1
2
3      Trustee's Deed Upon Sale

4      Recording requested by:

5      When recorded mail to:

6      RoundPoint Mortgage Servicing Corporation
       5032 Parkway Plaza Blvd
       Charlotte, NC 28217

7
       Forward tax statements to the address given above
8      TS #: **AZ-11-461945-AB**                          Space above this line for recorders use.
       Title Order #: **110304944-AZ-GTI**

9                                                    AFFIDAVIT OF VALUE EXEMPT
                                                     PURSUANT TO A.R.S SECTION 11-
                                                     1134 (B) (1).

10
                           **Trustee's Deed Upon Sale**
11
       A.P.N.: **205-07-138 1**                     Transfer Tax: **$0.00**
12
       The Grantee Herein **IS** the Foreclosing Beneficiary
13     The amount of the unpaid debt together with costs was:       **$803,446.71**
       The amount paid by the grantee at the trustee sale was:      **$780,965.12**
       Said property is in the City of:  **GLENDALE**, County of **MARICOPA**
14
       **QUALITY LOAN SERVICE CORPORATION** , as Trustee, (whereas so designated in the Deed of Trust
15     hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY**
       to
16
       **Taylor Bean & Whitaker Corp**
17
       (herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest
18     conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the
       county of **MARICOPA**, State of **Arizona**, described as follows:

19     **LOT NINETY-ONE (91), INDIAN SPRINGS ESTATES, ACCORDING TO THE PLAT OF RECORD IN
       THE OFFICE OF THE COUNTY RECORDER OF MARICOPA COUNTY, ARIZONA, IN BOOK 306 OF
       MAPS, PAGE 9.**

20     This conveyance is made in compliance with the terms and provisions of the Deed of Trust executed by
       **NOLAN  RYAN , AN UNMARRIED MAN**, as trustor, dated **6/26/2007**, and recorded on **7/2/2007** as
21     instrument number **20070758619**, in Book **xxx**, Page **xxx**,  of Official Records in the office of the
       Recorder of **MARICOPA, Arizona**, under the authority and powers vested in the Trustee designated in
22     the Deed of Trust or as the duly appointed trustee, default having occurred under the Deed of Trust
       pursuant to the Notice of Sale under the Deed of Trust recorded on **10/3/2011**, instrument no
23     **20110819491**, in book ,Page  of Official records. Trustee having complied with all applicable statutory
       requirements of the State of Arizona and performed all duties required by the Deed of Trust including
       sending a Notice of Sale within five days by certified mail, postage pre-paid to each person entitled to
24     notice in compliance with Arizona Civil Code 33-809.

25
26

20120019556

Trustee's Deed Upon Sale

All requirements per Arizona Statutes regarding the mailing, personal delivery and publication of copies of Notice of Trustee's Sale, and the posting of copies of Notice of Trustee's Sale have been complied with. Trustee, in compliance with said Notice of Trustee's sale and in exercise of its powers under said Deed of Trust sold said real property at public auction on 1/3/2012. Grantee, being the highest bidder at said sale became the purchaser of said property for the amount of said bid, being **$780,965.12**, in lawful money of the United States, in pro per, receipt their of is hereby acknowledged in full/partial satisfaction of the debt secured by said Deed of Trust.

In witness thereof, **QUALITY LOAN SERVICE CORPORATION**, as Trustee, has this day, caused its name to be hereunto affixed by its officer thereunto duly authorized by its corporation by-laws

Date:     JAN 0 9 2012

**QUALITY LOAN SERVICE CORPORATION**

By: Janice Treanor, Assistant Vice President

State of: **California**)
County of: **San Diego**)
On    JAN 0 9 2012    before me, _____ B. Perez _____ a notary public, personally appeared **Janice Treanor**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of **California** that the foregoing paragraph is true and correct

WITNESS my hand and official seal.

Signature _____ (Seal)
                B. Perez

B. PEREZ
Commission # 1903663
Notary Public - California
San Diego County
My Comm. Expires Sep 15, 2014

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE

'This instrument is being recorded as an ACCOMMODATION ONLY, with no Representation as to its effect upon title

COMPLAINT FOR DAMAGES
- 28-

20120019556

Trustee's Deed Upon Sale

**T.S. #: AZ-11-451945-AB**

## <u>Grantee Contact Information</u>

**Taylor Bean & Whitaker**
**4901 Vineland Road, Suite 120,**
**Orlando, FL, 32811**

Organization Information: Incorporated, Organized, Licensed, Chartered or Registered in the
State of **FL** and chartered or formed in the Country of **United States.**

Unofficial Document

COMPLAINT FOR DAMAGES
- 29-

1

## CERTIFICATE OF SERVICE

2

    I Nolan Ryan certify that a copy of the Summons and Complaint will be

3

served in compliance with Fed.R.Civ.P Rule 4 to the following;

4

QUALITY LOAN SERVICE CORPORATION

5

IN C/O MCCARTHY, HOLTHUS & LEVINE R.A.

6

8502 VIA DE VENTURA, SUITE 200

PHOENIX, AZ 85258

7

8

5141 5TH AVENUE

SAN DIEGO, CA 92102

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26